76 F.3d 1240
 316 U.S.App.D.C. 187
 Elaine MITTLEMAN, Appellant,
v.
OFFICE OF PERSONNEL MANAGEMENT; James B. King, in his
Official Capacity as Director;
Richard Ferris, in his Official Capacity as Acting Associate
Director for Investigations.
 No. 95-5125.
 United States Court of Appeals,
District of Columbia Circuit.
 March 5, 1996.
Suggestion for Rehearing In Banc Denied July 5, 1996.
 
 Eric H. Holder, Jr., United States Attorney, R. Craig Lawrence, Assistant United States Attorney, Mark E. Nagle, Assistant United States Attorney, and Michael T. Ambrosino, Assistant United States Attorney, were on the motion for summary affirmance for the appellees.
 Elaine Mittleman, pro se.
 Before WALD, WILLIAMS, and ROGERS, Circuit Judges.
 Opinion for the Court filed PER CURIAM.
 
 PER CURIAM:
 
 1
 Elaine Mittleman appeals a decision by the district court granting summary judgment to appellees the Office of Personnel Management, James B. King, and Richard Ferris (collectively "OPM"). We affirm.
 
 
 2
 Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq. (1994), Mittleman requested all documents collected in a background investigation conducted by OPM regarding her application for government employment. OPM released the requested documents to Mittleman after redacting portions of them identifying the sources of certain information pursuant to FOIA's exemption for law enforcement records set forth in 5 U.S.C. § 552(b)(7)(D) ("Exemption 7(D)").
 
 
 3
 After exhausting her administrative appeals, Mittleman filed suit in district court challenging OPM's determination as to the applicability of Exemption 7(D). The district court granted summary judgment for OPM. Mittleman v. OPM, No. 92cv00158, Memorandum Order (D.D.C. Jan. 18, 1995) ("Mem. Order").
 
 
 4
 OPM now moves for summary affirmance of the district court's ruling. We conclude the district court correctly determined that information obtained during OPM's background investigation was compiled for law enforcement purposes and that the sources of such information, as well as the information which would reveal the sources' identities, were properly withheld from disclosure pursuant to Exemption 7(D).
 
 I. BACKGROUND
 
 5
 In 1983, Mittleman sought employment for a Schedule C position with the Department of Commerce in the International Trade Administration Section. Pursuant to a request from the Department of Commerce, OPM conducted a background investigation of Mittleman [316 U.S.App.D.C. 189] in connection with her eligibility for a "critical sensitive" security clearance. Two sources in the investigation provided information to OPM under an express promise of confidentiality.
 
 
 6
 In May 1983, Mittleman requested copies of her investigative file from OPM. The file was disclosed with portions deleted to protect the identities of the two confidential sources. The deletions were made pursuant to Exemption (k)(5) of the Privacy Act. 5 U.S.C. § 552a(k)(5) (records may be exempt from disclosure if they consist of "investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment").
 
 
 7
 In 1986, Mittleman filed suit in district court against OPM and other agencies and individuals, seeking review of OPM's partial denial of her request for the investigatory file. The district court determined that the Privacy Act claim was barred by the two-year statute of limitations and dismissed the FOIA claim for failure to exhaust administrative remedies. Mittleman v. United States Treasury, 773 F.Supp. 442, 448, 451 n. 7 (D.D.C.1991).
 
 
 8
 In 1990 and 1991, the United States House Subcommittee on Civil and Constitutional Rights, chaired by Rep. Don Edwards, and the Subcommittee on the Civil Service, chaired by Rep. Gerry Sikorski, conducted joint hearings on due process in security clearance determinations. Mittleman testified before the Subcommittees about her experience with background investigations. Correspondence between Reps. Edwards and Sikorski and then-Director of OPM Constance Newman concerning Mittleman ensued.
 
 
 9
 In October 1991, pursuant to FOIA, Mittleman requested from OPM all correspondence, memoranda, and documents involving her OPM background investigation. Specifically, Mittleman sought all documents relating to Newman's March 8, 1990 testimony before the Subcommittees which referred to Mittleman, and all documents, memoranda, and files concerning the correspondence dated March 13, 1990, April 23, 1990, July 27, 1990, September 21, 1990, April 15, 1991, and August 20, 1991, between Reps. Edwards and Sikorski and Director Newman.
 
 
 10
 OPM released a number of documents including a "Director's Decision Summary," which had been used to prepare a letter from Director Newman to Reps. Edwards and Sikorski. OPM also rereleased copies of the redacted pages from the two confidential sources. OPM relied on Exemption 7(D) for the redactions, asserting that release of the information would jeopardize the identities of the confidential sources. After completing an administrative appeal, Mittleman filed the instant suit in district court alleging that the information was improperly withheld under FOIA.
 
 
 11
 The district court determined that OPM properly withheld the information under Exemption 7(D) because the government had demonstrated: (1) the personnel background investigation was compiled for law enforcement purposes; (2) the sources provided the information under express assurances of confidentiality; and (3) the withheld information could reasonably be expected to disclose the sources' identities. Mem. Order at 2.
 
 II. DISCUSSION
 
 12
 Exemption 7(D) of FOIA exempts from disclosure
 
 
 13
 records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (D) could reasonably be expected to disclose the identity of a confidential source ... which furnished information on a confidential basis.
 
 
 14
 5 U.S.C. § 552(b)(7)(D). On appeal, Mittleman is only challenging the district court's determination that the background check was compiled for law enforcement purposes. Mittleman does not dispute the determinations that the sources were given express assurances of confidentiality or that the redacted information was limited to protect the sources' identities. In any event, those latter determinations appear proper. This opinion, therefore, is limited to addressing whether the records were compiled for law enforcement purposes.
 
 
 15
 [316 U.S.App.D.C. 190] OPM is authorized to perform personnel background investigations. See 5 U.S.C. §§ 1104, 1303-1305, 2301, 3301, 7312, and 7532; 22 U.S.C. §§ 272b and 2585; 42 U.S.C. §§ 1874, 2165, and 2455; 5 C.F.R. parts 731, 732, and 736. In addition, Executive Order No. 10450 authorizes background checks to ensure that the "employment or retention in employment in the Federal service of the person being investigated is clearly consistent with the interests of the national security ... [and that the employee is] reliable, trustworthy, of good conduct and character, and of complete and unswerving loyalty to the United States." See 18 Fed.Reg. 2489, 2489 (April 29, 1953).
 
 
 16
 The principal purpose of a background investigation is to ensure that a prospective employee has not broken the law or engaged in other conduct making her ineligible for the position. See Koch v. Department of Justice, 376 F.Supp. 313, 315 (D.D.C.1974). The check also helps "to determine whether there are any law enforcement or security issues in [her] past that could affect [her] ability ... to carry out" the position. See Doe v. United States Department of Justice, 790 F.Supp. 17, 20 (D.D.C.1992). We have held that the term "law enforcement purpose" is not limited to criminal investigations but can also include civil investigations and proceedings in its scope. See Pratt v. Webster, 673 F.2d 408, 420 n. 32 (D.C.Cir.1982). Thus, " '[e]nforcement' of the law fairly includes not merely the detection and punishment of violations of law but their prevention." Miller v. United States, 630 F.Supp. 347, 349 (E.D.N.Y.1986). It is immaterial to those objectives that OPM did not discover any information suggesting that Mittleman actually violated the law.
 
 
 17
 Finally, Mittleman's assertion that the inclusion of excerpts from her background investigation file in the "Director's Decision Summary" deprives the information of its Exemption 7(D) protection is unfounded. It is the nature of the information at issue, not the particular type of file in which it is found, which determines whether the information is exempt. FBI v. Abramson, 456 U.S. 615, 625-27, 102 S.Ct. 2054, 2061-62, 72 L.Ed.2d 376 (1982). Thus, because the background investigation was originally compiled for law enforcement purposes, the portions of the "Director's Decision Summary" which include information from the investigation may also be withheld pursuant to Exemption 7(D).
 
 III. CONCLUSION
 
 18
 The district court properly determined that OPM's background investigation information was compiled for "law enforcement purposes" and, therefore, is exempt from disclosure pursuant to Exemption 7(D). Accordingly, the motion for summary affirmance is granted.
 
 
 19
 So ordered.